IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD MCDUFFIN WILLIAMS          *
                                  *
    Plaintiff,                    *
                                  *      Case No. SAG-20-204
        v.                        *
                                  *
MIDWEST RECOVERY SYSTEM, LLC      *
                                  *
    Defendant.                    *
                                  *

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Donald McDuffin Williams ("Plaintiff"), who appears *pro se*, has filed a Motion for Default Judgment against Defendant Midwest Recovery System, LLC ("Midwest"), relating to his Complaint asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692m, the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code. Ann., Com. Law. §§ 14-1201 through 14-1204, the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 through 13-501, and two state law tort claims. ECF 28. Midwest did not file an opposition, and the deadline to do so has now passed. *See* Loc. R. 105.2.a (D. Md. 2018). I have reviewed Plaintiff's Complaint, his default judgment motion, and the accompanying attachments. I have also reviewed Plaintiff's supplemental filing in support of his request for actual damages. ECF 31. No hearing is necessary. *See* Loc. R. 105.6. For the reasons discussed below, Plaintiff's Motion for Default Judgment will be GRANTED IN PART and DENIED IN PART, and damages will be awarded as set forth herein.

I.     FACTUAL BACKGROUND

The following facts are derived from Plaintiff's Complaint, ECF 1.  Plaintiff allegedly owed a personal auto loan to Pelican Auto Finance, LLC.  ECF 1 ¶¶ 8–9.  Plaintiff and his son share the same name but have different social security numbers.  *Id.* ¶ 11.  In February, 2019, a Midwest representative, employee, or agent "contacted Plaintiff's son at his residence" regarding the debt, and "questioned Plaintiff's son as to his age and whether he owned property."[1]  *Id.* ¶ 10.  The Complaint alleges that Midwest "communicated again with Plaintiff's son" and was advised that it was contacting the wrong person.  *Id.* ¶ 11.  The only specific additional contact alleged is on or about March 5, 2019, when Midwest "contacted Plaintiff's son again at his residence" and "berate[d]" him, stating "if legal action is taken, you will be responsible for attorneys fees, court costs, and interest, as allowed by your contract."  *Id.* ¶ 12.  Since that call, Midwest has taken no legal action against Plaintiff or his son.  *Id.* ¶ 13.

Plaintiff, who is currently incarcerated, alleges that as a result of Midwest's conduct, he "has sustained actual damages including, but not limited to, injury to Plaintiff's reputation, out-of-pocket expenses, damage to Plaintiff's credit, physical, emotional, and mental pain and anguish and pecuniary loss."  *Id.* ¶ 23.  In a supplemental submission, Plaintiff alleges that he has suffered "loss of credit" and "lowered credit score," and has been denied credit based on impaired creditworthiness.  ECF 31.  He has not alleged any specific facts to support or establish any other actual damages.

Plaintiff filed his Complaint on January 29, 2020.  ECF 1.  After originally retaining counsel and serving an answer, Midwest's counsel withdrew his appearance and no new counsel has

---

[1] The Complaint does not clarify whether "his residence" refers to the residence of Plaintiff or the residence of his son and does not state whether the caller from Midwest disclosed the existence of the debt during this initial call.

entered an appearance. Accordingly, Plaintiff obtained a Clerk's Entry of Default, ECF 24, and now seeks default judgment.

## II.     STANDARD FOR DEFAULT JUDGMENT

In reviewing Plaintiff's Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the Complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). It, however, remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.* at 780-81; *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, it must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780–81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154–55 (2d Cir. 1999); *Entrepreneur Media, Inc. v. JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court may also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award. *See Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 598; *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("The court need not make this determination [of damages] through a hearing, however. Rather, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *see also Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civil No. ELH-11-832, 2011 WL

5151067, at *4 (D. Md. Oct. 27, 2011) (determining that, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested"); *JTH Tax, Inc. v. Smith*, Civil No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

In sum, the court must (1) determine whether the unchallenged facts in Plaintiff's Complaint constitute a legitimate cause of action, and, if they do, (2) make an independent determination regarding the appropriate amount of damages.

### III.  ANALYSIS

#### A.  FDCPA Liability

Plaintiff asserts that Midwest violated the FDCPA in multiple ways.  First, assuming the truth of Plaintiff's allegations, Midwest communicated with persons other than Plaintiff, specifically Plaintiff's son, that Plaintiff owed a debt, in violation of § 1692c(b), which provides "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."  Second, Midwest communicated with Plaintiff's son, on more than one occasion, in violation of § 1692b(3), which prohibits communicating with a third party "more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information." Plaintiff's factual allegations, taken as true, establish violations of those two FDCPA subsections.

4

The remainder of Plaintiff's allegations, however, are unsuccessful. While Plaintiff alleges harassing conduct, he would not have standing to assert such claims because he was not the recipient of any of the calls. Moreover, Plaintiff's allegations do not establish that Midwest made any false representations about the status of his debt, but only stated that "if legal action is taken," there would be certain legal responsibilities.[2] ECF 1 ¶ 12. Thus, Plaintiff's own allegations do not establish that Midwest threatened to take legal action that could not lawfully be taken or communicated any false information about the debt's status.

**B. FDCPA Damages**

For the two FDCPA violations Plaintiff has established, the FDCPA provides for statutory damages in an amount up to $1,000 for each lawsuit, 15 U.S.C. § 1692k(a)(2)(A), in addition to any actual damages a plaintiff sustains. *See Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 651 (6th Cir. 1994) ("Congress intended to limit 'other damages' to $1,000 per proceeding, not to $1,000 per violation."). In determining the amount of statutory damages to be awarded in a particular case, a court shall consider, among other factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Other courts have noted that "the maximum statutory damage award is only assessed in cases where there [have] been repetitive, egregious FDCPA violations and even in such cases, the statutory awards are often less than $1000." *Ford v. Consigned Debts & Collections, Inc.*, No. 09-3102 (NLH)(AMD), 2010 WL 5392643, at *5 (D.N.J. Dec. 21, 2010); *see, e.g.*, *Marchman v. Credit Sols. Corp.*, No. 10–226,

---

[2] Additionally, Plaintiff's conclusory allegation that defendant "falsely represent[ed] the amount, character or legal status of a debt," ECF 1 ¶ 17, is unsupported by any other factual assertions. Plaintiff admits that the debt was at least "originally owed by Plaintiff," *id.* ¶ 8, and does not allege that the debt was later discharged. That Midwest has not garnished Plaintiff or his son's wages, *id.* ¶ 13, does not show that a true debt was not owed.

2011 WL 1560647, at *11 (M.D. Fla. Apr. 5, 2011) (awarding $100 in statutory damages for violations of the FDCPA where the defendant called the plaintiff twice and threatened to contact the plaintiff's employer); *Pearce v. Ethical Asset Mgmt.*, No. 07–718S, 2010 WL 932597, at *6 (W.D.N.Y. Jan. 22, 2010) (awarding $250 in statutory damages for violation of the FDCPA where the defendant left multiple voicemails threatening to sue, used profanity in other phone calls, improperly disclosed plaintiff's debt, and made unauthorized withdrawals from plaintiff's bank account). For example, this Court has found an award of just $50 in statutory damages appropriate where the defendant committed an FDCPA violation that was, "at most a technical misstep." *See Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 627 (4th Cir. 1995) (affirming attorney fee award was appropriate in light of minimal damages awarded by the trial court).

In this case, while the Complaint is less than clear, Midwest is alleged to have made just one additional call to Plaintiff's son after the initial call, when Midwest ascertained that it was contacting the wrong individual. Midwest's efforts were therefore neither frequent nor persistent. Moreover, as noted above, the language quoted from the call does not establish that any specific threat was made or that any false information was conveyed. A modest award of statutory damages in the amount of $100 is therefore appropriate.

With respect to the "actual damages" alleged by Plaintiff, he has not demonstrated a plausible causal connection between Midwest's violation of the FDCPA and the damages he claims. The statute allows a claimant to recover actual damages that are the "result of" defendant's violations. *See* 15 U.S.C. § 1692k(a); *Boerner v. LVNV Funding LLC*, 358 F. Supp. 3d 767, 781 (E.D. Wis. 2019) (explaining that plaintiff must show his damages stem from the alleged violation not from the mere fact that he faces a collection lawsuit); *Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290, 295–96 (S.D. Ohio 1996) (declining to award actual damages where plaintiff could not

link his alleged damages to defendant's unlawful conduct and injuries alleged were attributable to unrelated causes); *accord* Md. Code Ann., Com. Law § 14-203 (providing that damages must be "proximately caused by the violation"). The effects on his credit score stem not from the telephone calls Midwest made to Plaintiff's son, but from the fact that he did not make the required payments on his debt. Thus, no award of actual damages is appropriate in this case in the absence of any proffered facts to substantiate one.

Finally, while Plaintiff purports to seek "attorneys' fees and costs," he has been *pro se* since the inception of the case and has not therefore incurred attorneys' fees. As for costs, the Court waived the filing fee in this matter. ECF 32. The docket does not suggest that Plaintiff has incurred any other costs that might be reimbursable. No fees or costs will therefore be awarded.

### C. MCDCA and MCPA

The MCDCA's prohibitions are generally parallel to the prohibitions of the FDCPA, and Midland's actions therefore violated the Maryland statute as well. *See* Md. Code Ann., Com. Law, § 14-202(5)–(6) (prohibiting a debt collector from disclosing certain harmful information about the debtor to a person that does not have a legitimate business need for the information and from communicating with a person related to the debtor in a harassing manner); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 732–33 (D. Md. 2011) (noting the similarities between the federal and Maryland statutes and finding that defendant violated the MCDCA for the same reasons it violated the FDCPA). Additionally, the MCPA prohibits "unfair or deceptive trade practices," and specifically states that any violation of the MCDCA is an unfair or deceptive trade practice under the MCPA. Md. Code Ann., Com. Law. §§ 13-301(14)(iii), 13-303. Therefore, Midland's conduct also violated the MCPA. Actual damages are compensable under these state statutes. §§ 13-408; 14-203. However, as explained above, Plaintiff has not alleged any actual

damages that were proximately caused by Midland's violation. Therefore, no additional damages will be awarded under the MCDCA or MCPA.

**D. State Law Tort Claims**

Plaintiff's complaint has not alleged a cognizable intentional infliction of emotional distress ("IIED") or invasion of privacy claim under Maryland law. An IIED claim must allege (1) intentional or reckless conduct, (2) extreme and outrageous conduct, (3) a causal connection between the wrongful conduct and the emotional distress, and (4) severe emotional distress. *Dick v. Mercantile-Safe Deposit and Trust Co.*, 63 Md. App. 270, 275 (1985). Plaintiff alleges that Midwest wrongfully contacted his son twice. This conduct, though unlawful, does not rise to the level of "extreme and outrageous" to support an IIED claim. *See, e.g.*, *Dick*, 63 Md. App. at 276–77 (defining "extreme and outrageous" as "a complete denial of the plaintiff's dignity as a person" and holding three phone calls where defendant debt collector used threatening language over the course of nine months did not meet this standard). Moreover, the facts alleged in Plaintiff's complaint and his supplemental filing do not show that any emotional distress he suffered was "severe."

Plaintiff's invasion of privacy claim is similarly lacking. Maryland recognizes a claim for invasion of privacy, intrusion upon seclusion where there is "an intentional intrusion upon another person's solitude, seclusion, private affairs, or concerns in a manner that would be highly offensive to a reasonable person."[3] *Gamble v. Franklin & Weber, P.A.*, 846 F. Supp. 2d 377, 383 (D. Md.

---

[3] Plaintiff's complaint does not specify which type of invasion of privacy claim he intends to bring, but intrusion upon seclusion seems the most likely. Still, the Court notes that the other three recognized invasion of privacy torts—appropriation of one's name or likeness, unreasonable publicity, and false light—are not adequately pleaded either. Plaintiff has not alleged that Midwest used his name or likeness. Plaintiff has also not alleged that Midwest wrongly publicized any information about him. *See Household Fin. Corp. v. Bridge*, 252 Md. 531, 537–40 (1969) (explaining the differences between the four invasion of privacy torts).

2012). Midwest's calls, however, were not to Plaintiff, but to Plaintiff's son, so did not intrude upon Plaintiff's solitude. Moreover, the calls were not so frequent or vicious to amount to an invasion of privacy. *See Household Fin. Corp. v. Bridge*, 252 Md. 531, 543–44 (1969) (holding that a debt collector calling plaintiff five or six times and her parents two or three times over an eleven-month period and using some objectionable language was not such an intrusion to constitute a cause of action for invasion of privacy); *Gamble*, 846 F. Supp. 2d 377 at 383–84 (D. Md. 2012) (explaining that a debt collector's actions to collect a debt only amount to in invasion of privacy when the conduct "becomes more persistent, deliberate, or vile" (citations omitted)). Therefore, Midwest is not liable for Plaintiff's IIED or invasion of privacy claims and no additional damages will be assessed.

**IV.   CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Default Judgment will be GRANTED IN PART and DENIED IN PART as described herein. Judgment will be entered for Plaintiff against Midwest as to Count One in the amount of $100.00 in statutory damages. The Clerk is directed to CLOSE this case.


Dated:  June 11, 2021                                         /s/
                                                        Stephanie A. Gallagher
                                                        United States District Judge

9